**FINAST METAL PRODUCTS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 554–80C.**

United States Claims Court.

Aug. 4, 1987.

Order (i) Denying Motion for Substitution Pursuant to Rule 25, and (ii) Conditionally Directing Dismissal Of Complaint With Prejudice

WIESE, Judge.

## I.

On January 7, 1977, the Armed Services Board of Contract Appeals (the "board") entered a decision denying an appeal by Finast Metal Products, Inc. ("Finast") of the default termination of its contract for the manufacture of 60 mm mortar projectiles. *Finast Metal Products, Inc.*, 77-1 B.C.A. (CCH) ¶ 12,331. A complaint seeking review of that decision under the standards of the Wunderlich Act, 41 U.S.C. §§ 321–322 (1982), was filed in the Court of Claims (this court's statutory predecessor) on October 15, 1980. The complaint has been on this court's docket ever since.

During that time—which shortly shall come to seven years—the litigation has been marked by these events: First, Finast was dissolved by order of the Secretary of the State of New York for non-payment of taxes (This happened in 1981—some five months after the complaint was filed.); thereafter, the assets were transferred to plaintiff's president and sole shareholder, Rose Kramer. Second, the case was twice again considered by the board—first on a motion for relief from judgment, which the board heard and rejected in a lengthy opinion issued January 28, 1985, 85-1 B.C.A. (CCH) ¶ 17,873, and second, on a motion for reconsideration for relief from judgment, which was denied in an unpublished opinion of April 17, 1985. Third, and last, the progress of the case here, though notably without substantive accomplishments, has nevertheless engaged the time and attention of the court in numerous ongoing procedural concerns.

The latest of these, and that which occasions this order, is a motion filed by Mrs. Kramer on January 22, 1986, to be substituted as the named plaintiff so that she can pursue the litigation *pro se*.[1] The Government opposes this motion on grounds that the requested substitution would effectively circumvent RUSCC 81(d)(7), which prohibits anyone other than an attorney from representing a corporation. The Government also moves to dismiss on grounds that plaintiff has failed to secure representation of counsel in violation of this court's prior orders.

Having reviewed the submissions of the parties and without oral argument, the court denies Mrs. Kramer's motion for substitution and conditionally grants defendant's motion to dismiss. The reasons for this decision are set forth hereafter.

## II.

RUSCC 25(c) provides in pertinent part:

In case of any transfer of interest, the action may be continued by or against the original party, *unless* the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. [Emphasis added.]

Under this rule, the transferee of a party's interest enjoys no absolute right to be substituted upon demand. Rather, it is left to the court's discretion to determine whether "the transferee's presence would facilitate the conduct of the litigation." *Minnesota Mining & Manufacturing Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1264 (Fed.Cir. 1985) (quoting 7C C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1958 at 555–57 (1986)).

---

1. In her original motion, Mrs. Kramer asked to be substituted as successor to the rights and assets of the dissolved corporation. In later submissions filed on June 23, 1987 and July 8, 1987, Mrs. Kramer informed the court that, in the course of dissolution, Finast changed its structure from a corporation into a wholly-owned company. In this new version of the motion, Mrs. Kramer sought to be substituted as sole owner of the company to which the assets of the corporation were transferred. Inasmuch as there is no legally significant difference in these positions, the court treats the subsequent filings as simply repetitions of the original motion.

Mrs. Kramer argues that her presence is necessary to facilitate the conduct of this litigation because Finast's involuntary dissolution left the corporation legally incapable of pursuing the case in its own name. This is not a correct statement of the law.

Though it may come as a surprise to the layperson, a corporation may remain in existence for purposes of prosecuting a case long after it has been dissolved for all other purposes. As the Supreme Court has explained: "[A] time-honored feature of the corporate device is that a corporate entity may be utterly dead for most purposes, yet have enough life remaining to litigate its actions. All that is necessary is a statute so providing." *Defense Supplies Corp. v. Lawrence Warehouse Co.*, 336 U.S. 631, 634–35, 69 S.Ct. 762, 763–64, 93 L.Ed. 931 (1949); *see also Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Building Corp.*, 302 U.S. 120, 127, 58 S.Ct. 125, 128, 82 L.Ed. 147 (1937). ("How long and upon what terms a state-created corporation may continue to exist is a matter exclusively of state power.")

In this case, the applicable state law is found in N.Y.Bus.Corp.Law § 1006 (McKinney 1963), which provides in pertinent part:

(a) A dissolved corporation, its directors, officers and shareholders may continue to function for the purpose of winding up the affairs of the corporation in the same manner as if the dissolution had not taken place, except as otherwise provided in this chapter or by court order. In particular, and without limiting the generality of the foregoing:

\* \* \* \* \* \*

(4) The corporation may sue or be sued in all courts and participate in actions and proceedings, whether judicial, administrative, arbitrative or otherwise, in its corporate name, and process may be served by or upon it.

(b) The dissolution of a corporation shall not affect any remedy available to or against such corporation, its directors, officers or shareholders for any right or claim existing or any liability incurred before such dissolution \* \* \*.

Under the plain language of this section, the dissolution of a corporation by proclamation for failure to pay state taxes does not affect the corporation's power to pursue pending litigation in its own name. *See, e.g., Vinlis Construction Co. v. Roreck*, 67 Misc.2d 942, 325 N.Y.S.2d 457 (1971), *aff'd*, 43 A.D.2d 911, 351 N.Y.S.2d 648 (1974), *dismissed in part, denied in part*, 35 N.Y.2d 715, 361 N.Y.S.2d 645, 320 N.E.2d 277 (1974). This, in fact, is precisely what plaintiff corporation has been doing in this court for the past seven years.

The real issue here is not whether plaintiff has legal capacity to pursue this litigation in its corporate name, but rather whether it would offend notions of fairness to deny Mrs. Kramer's motion for substitution. In exercising its discretion in this matter, the court recognizes that Mrs. Kramer has—quite literally—put the better part of her life into Finast. We fully appreciate the extent to which she must identify with the corporation's cause of action—in both a personal and financial sense. But in light of the enormous complications her unschooled participation would bring to the conduct of the complex litigation before the court, we cannot conclude that her substitution as *pro se* plaintiff would be in the best interests of justice. To explain:

Mrs. Kramer's sole reason for requesting to be substituted as named plaintiff is to escape the requirement in Rule 81(d)(7) that a corporation be represented by an attorney. This rule rests upon the principle that a corporation is an entity distinct from its officers and shareholders. That corporate "person" can no more be represented in court by a non-lawyer—even its own president and sole shareholder—than can any individual. Thus, long before Rule 81(d)(7) was promulgated, it was well settled that a corporation could be represented in federal court only by a lawyer. *See Osborn v. Bank of The United States*, 22 U.S. (9 Wheat.) 737, 830, 6 L.Ed. 204 (1824) ("A corporation, it is true, can appear only by attorney, while a natural person may appear for himself.").

The court is not free to waive this rule, even in cases of severe financial hardship. *See Richdel, Inc. v. Sunspool Corp.,* 699 F.2d 1366 (Fed.Cir.1983) (interpreting analogous U.S.Ct. of App.Fed.Cir. Rule 7(a)); *Algonac Manufacturing Co. v. United States,* 198 Ct.Cl. 258, 260–61, 458 F.2d 1373, 1375 (1972) (enforcing similar rule under former Court of Claims). The simple fact of the matter is that, along with its many advantages, the corporate form of doing business has certain drawbacks, and one of them is the corporation's inability to litigate claims in this court without the services of an attorney. A subsequent transfer of interest to an individual cannot be used to circumvent the rule. *See Palazzo v. Gulf Oil Corp.,* 764 F.2d 1381, 1385–86 (11th Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 799, 88 L.Ed.2d 775 (1986); *Jones v. Niagara Frontier Transportation Authority,* 722 F.2d 20, 23 (2d Cir. 1983).

Furthermore, even apart from the policy considerations that underlie Rule 81(d)(7), the interests of justice do not favor substitution of Mrs. Kramer as plaintiff. In pursuing its grievances against the Government, Finast has already had the benefit of two full hearings before the Armed Services Board of Contract Appeals, the results of which are reported in separate opinions totaling 88 pages of text. Despite its financial problems, the corporation was twice able to retain counsel to pursue its Wunderlich Act appeal here. In both instances, however, this court granted counsel leave to withdraw because of the attorney-client friction occasioned by Mrs. Kramer's penchant for meddling in matters of legal practice and strategy.[2] If Mrs. Kramer now finds it difficult to secure yet a third attorney to represent the corporation, she has no one to blame but herself.

Finally, any remaining doubts about whether this litigation can reasonably go forward with Mrs. Kramer as *pro se* plaintiff are resolved against her by the record of her recent effort at self-representation in connection with the present motion. Not content with a simple and concise statement of her position in layperson's terms, Mrs. Kramer has endeavored to couch her arguments in the language of lawyers, with the following discouraging results:

—She has erroneously represented to the court that § 1006 of the N.Y.Bus.Corp.Law is inapplicable to this case because the statute was not passed until 1986. (In fact, § 1006 was codified in its present form in 1963. The provision traces its lineage to the Gen.Corp.Law of 1890, which, in turn, was based on even earlier statutes.)

—She has cited to numerous irrelevant provisions in the rules of the Claims Court and the Federal Rules of Civil Procedure, and to irrelevant state case law.

—She has repeatedly accused opposing counsel of unspecified and unsubstantiated "wrongdoing" and "misrepresentation · of the facts" in connection with its conduct of this litigation in behalf of the Government.

—She has misread the reasons for continuances granted earlier in these proceedings.

—She has burdened the court with page after page of repetitive argument in virtually every procedural submission involved in this case.

While we infer from these shortcomings no deliberate intent to mislead the court, it is clear from this record that Mrs. Kramer lacks either the emotional detachment or the basic understanding of the law to facilitate conduct of complex litigation. Under similar circumstances, the Eleventh Circuit held that it was not an abuse of discretion for a trial court to deny a motion to substitute a sole shareholder as *pro se* plaintiff for a dissolved corporation. *National Independent Theatre Exhibitors, Inc. v. Buena Vista Distribution Co.,* 748 F.2d 602, 609 (11th Cir.1984), *cert. denied sub*

---

**2.** Finast's first counsel was permitted to withdraw on April 23, 1985 after it brought to the court's attention that Mrs. Kramer had filed "briefs" and "motions" with the board without the knowledge of counsel. Plaintiff's second counsel withdrew in October 18, 1985. In opposing that counsel's motion to withdraw, Mrs. Kramer stated: "[I]f Plaintiff's attorney merely does what is properly required of him, that in itself will be in the Plaintiff's best interest." It was apparent to the court that the same attorney-client friction had arisen again.

*nom. Patterson v. Buena Vista Distribution Co.,* 471 U.S. 1056, 105 S.Ct. 2120, 85 L.Ed.2d 484 (1985). The same reasoning applies here.

In the near-to-seven years that this complaint has been on the docket, the court has repeatedly had to revisit the case in order to take up one procedural matter or another. But nothing of substance was ever accomplished. The court's time—which is to say the public's time—is too valuable to indulge this exercise in amateur lawyering any longer. Mrs. Kramer's motion to be substituted as *pro se* plaintiff for Finast Metal Products, Inc. is DENIED.

With respect to defendant's motion to dismiss, the court finds that it is premature. In its order of January 2, 1986, the court had given plaintiff until February 18, 1986, to obtain counsel or face dismissal of its claim. Inasmuch as Mrs. Kramer's motion for substitution was filed on January 22, 1986, the running of the time clock on the court's January 2, 1986 order was suspended after that date. Thus, with the denial of Mrs. Kramer's motion for substitution, plaintiff has 27 days remaining to obtain counsel. If counsel does not appear within 27 days of the date of this order, the Clerk is directed to dismiss the complaint with prejudice. *This remaining time is absolute and shall not be extended for any reason.*

### III.

For the reasons stated, Rose Kramer's motion under RUSCC 25(c) to be substituted as party plaintiff is DENIED, and, subject to the conditions outlined in this order, the complaint is ordered dismissed.

IT IS SO ORDERED.

