**UNITED CALIFORNIA DISCOUNT CORPORATION, a California corporation, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 613–87C.**

United States Claims Court.

Feb. 12, 1990.

---

Byron G. Nelson, Redondo Beach, Cal., for plaintiff.

Allen D. Bruns, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Randall B. Pyles, Counsel, Western Bases, U.S. Marine Corps, and Katherine Waldbauer, Office of the Sol., U.S. Dept. of Labor, of counsel.

## OPINION

MARGOLIS, Judge.

This contract case is before the court on cross motions for summary judgment. Plaintiff is a financing institution which claims that it is entitled to receive the proceeds of a contract assigned to it by a government contractor. Those proceeds have been withheld pursuant to the Service Contract Act (SCA), 41 U.S.C. § 351–57 and the Contract Work Hours and Safety Standards Act (CWHSSA), 40 U.S.C. § 327 *et seq.*, because of the contractor's violations of federal wage and hour laws. Defendant argues that recovery should be denied because the plaintiff failed to comply with the provisions of the Anti–Assignment Acts, 41 U.S.C. § 15 and 31 U.S.C. § 3727. After careful review of the entire record and after hearing oral argument, the court finds that plaintiff failed to perfect an assignment against the government, and therefore is not entitled to recover the funds withheld. Accordingly, the defendant's motion for summary judgment is granted, and plaintiff's cross motion for summary judgment is denied.

## FACTS

In late 1985, Scott & Sons Moving & Storage, Inc. (Scott), not a party to this proceeding, was awarded two contracts to move and store the personal belongings of Department of Defense employees transferring into or out of the Marine Corps bases located at Camp Pendleton and El Toro, California.

Scott entered into a security agreement purporting to transfer Scott's right to receive payments under the contract to United California Discount Corporation (UCD), the plaintiff in this action. This was an ordinary factoring agreement, under which UCD purchased Scott's accounts receivable—including those arising under the Marine Corps contract—at a discount. Plaintiff received payments according to the terms of the financing arrangement until October 22, 1986.

On October 20, 1986, the Wage and Hour Division of the United States Department of Labor (DOL) requested that the Marine Corps suspend all future contract payments under the Service Contract Act, 41 U.S.C. §§ 351–57 and the Contract Work Hours and Safety Standards Act, 40 U.S.C. § 327 *et seq.*, because its investigation resulted in allegations that Scott had, in violation of federal law, underpaid its employees by $93,728.[1] On October 22, 1986, the United States Marine Corps (USMC) suspended making payments on the contract pursuant to the DOL request.

Soon thereafter, on November 24, 1986, the contract between Scott and the government was terminated because of Scott's default. The government re-let the contract, incurring $8,067.30 in reprocurement costs. On December 5, 1986, UCD sent a letter to the USMC contracting officer, advising him of the factoring agreement between UCD and Scott. That letter included

---

1. As a result of the DOL request, the government withheld $90,350.15 in payments otherwise due to Scott under the contract. Under the SCA and the CWHSSA, the determination whether an employer has underpaid its employees and if so, by how much, is made by a Department of Labor Administrative Law Judge (ALJ).

The administrative proceeding against Scott was pending at the time the present cross motions were filed. UCD was denied the right to intervene in that proceeding because it was found not to be a real party in interest. On December 26, 1989, the presiding ALJ entered a default judgment against Scott. In his Decision and Order, the ALJ found that Scott violated the SCA and the CWHSSA, and that Scott was liable to its former employees in the amount of $90,745.78.

a copy of the security agreement and financing statement executed by Scott and UCD. On February 6, 1987, UCD sent a written notice of assignment to the contracting officer.

The plaintiff does not dispute the propriety of the government's termination of Scott's contract. However, plaintiff argues that, because of its status as a secured party, it is entitled as a matter of law to receive $85,660.75 of the payments withheld from Scott.[2] Plaintiff asserts that Scott's assignment to UCD was either valid, or that the government by its actions waived any flaws in the assignment procedure. Plaintiff argues in the alternative that, even if the assignment is invalid, UCD should receive payment under either an equitable lien theory or a quantum meruit theory.

Defendant argues that plaintiff's failure to comply with the notice provisions of the Anti–Assignment Acts, 41 U.S.C. § 15 and 31 U.S.C. § 3727, rendered the attempted assignment a nullity. The government denies that it waived compliance with any provision of the Acts. Finally, defendant asserts that Scott, the assignor, had no right to receive the funds properly withheld by the Marine Corps pursuant to the SCA and CWHSSA. Plaintiff, therefore, as the assignee, cannot recover *even if* the proceeds from the contract between Scott and the Marine Corps had been properly assigned.

## DISCUSSION

### A. *Anti–Assignment Acts*

The Assignment of Claims Act (31 U.S.C. § 3727) and the Assignment of Contracts Act (41 U.S.C. § 15) are also known as the Anti–Assignment Acts because they operate to invalidate transfers of government contracts or claims against the government. They were enacted so that the government would always be able to "deal exclusively with the original claimant" and would always be aware of its obligations.

*Patterson v. United States*, 173 Ct.Cl. 819, 823, 354 F.2d 327, 329 (1965).

A contractor's inability to effect an assignment of the proceeds of its contract with the government often prevented it from undertaking the contract. Recognizing the need for government contractors to obtain private financing to perform those contracts, Congress amended the statutes to include a financing institution exception to the bar on assignments. Act of Oct. 9, 1940, 54 Stat. 1029. The purpose of the exception was to "make it easier for government contractors to secure financing for carrying out obligations to the Government to the end that government contracts might be speedily and effectively performed." *Waxman v. United States*, 125 Ct.Cl. 464, 500, 112 F.Supp. 570, 588 (1953).

The financing institution exception lifts much of the onus of the Anti–Assignment Acts. However, the statutes must still be read as a whole. Congress did not repeal the Acts entirely; Congress merely created an exception. The Acts' notice provisions are clear; they require the contractor to give written notification of the assignment, together with a true copy of the instrument of assignment, to the contracting officer or official and to the disbursing officer or official. 41 U.S.C. § 15, 31 U.S.C. § 3727(c). The language of the exception indicates that Congress still sought to protect the government from the uncertainties devolving from secret assignments.

To that end, the financing institution exception is strictly construed, and the contractor must meet the requirements of that section to gain the benefit of the exception. *See e.g., American Financial Associates, Ltd. v. United States*, 5 Cl.Ct. 761, 768 (1984), *aff'd*, 755 F.2d 912 (Fed.Cir.1985), and cases cited therein. A plaintiff who is in compliance with the notice provisions of the exception is entitled to the same degree of protection as any innocent assignee who acts in good faith. *Central National Bank of Richmond v. United States*, 117 Ct.Cl. 389, 397–398, 91 F.Supp. 738, 740 (1950). However, failure of the contractor

---

**2.** This amount represents the balance of Scott's account with UCD minus $8,067.30 in repro-

curement costs which UCD concedes is a valid offset.

508

to abide by the notice provisions of the financing institution exception will invalidate the assignment. *Uniroyal, Inc. v. United States*, 197 Ct.Cl. 258, 262–263, 454 F.2d 1394, 1396 (1972). In the instant case, plaintiff utterly failed to comply with the notification procedures necessary to perfect its assignment.

### B. *Compliance with Notice Provisions*

■ The notice provisions of the Acts require the assignee to file a written notice of the assignment *and* a copy of the assignment with the contracting official *and* the disbursing official. 41 U.S.C. § 15, 31 U.S.C. § 3727(c). Plaintiff concedes that it did not comply with the notice provisions.

First, no true copy of the assignment was filed with either the contracting official or the disbursing official. Although the notification of assignment sent to the contracting officer indicated that a true copy of the assignment was attached, none was in fact attached. Plaintiff does not assert that it ever sent a true copy of the assignment to the disbursing official.

Second, plaintiff does not even assert that any written notice of assignment was ever given to either the contracting or the disbursing officials prior to the time defendant began withholding funds. Plaintiff did not give notice of the assignment until *after* the USMC refused to make payments pursuant to the DOL's withholding request. An assignment against the government will be effective, if at all, only *after* proper notification. *Reliance Insurance Co. v. United States*, 15 Cl.Ct. 62, 66 (1988).

By the time the plaintiff asserts that it complied with the notification provisions, the USMC had already terminated the contract with Scott. Therefore, even if the plaintiff had given written notification to both the contracting and disbursing officials (which it did not) and even if it had included a true copy of the assignment (which it did not), the notification would have come too late to perfect an assignment on behalf of UCD. In effect, compliance after termination of the contract would have given UCD the right to receive future contract proceeds from a defunct contract.

The plaintiff argues that it relied on an "alternative" mode of compliance contained in the Department of the Army's 1968 "Prompt Payment Pointers" brochure, a publication not prepared by the USMC. This argument is without merit. First, the statutes and implementing regulations set forth the legal requirements for an effective assignment. A government publication inconsistent with the law is of no force and effect. Second, even if the brochure *did* represent an alternative method of creating an assignment, plaintiff did not comply with the procedures set forth in that brochure. Section I, part 9(e) of the brochure states that the address on the voucher must be in care of the lending institution; in this case, all payments were addressed to Scott & Sons, with no additional "in care of" language in favor of UCD. Part 9(e) also requires that the checks be made payable to the contractor "in care of" the lending institution; in this case, all checks were made payable only to Scott & Sons, with no mention of UCD. For these reasons, plaintiff's argument that it relied on the brochure is not relevant to the disposition of this case.

Considering all of the evidence in the light most favorable to the plaintiff, UCD has failed to show that it complied with the notification provisions of the Acts by giving timely written notification of the assignment, together with a true copy of that assignment, to the contracting and disbursing officials at the USMC.

### C. *Waiver of Notice Provisions*

■ Some cases have recognized that the government may waive the notice provisions of the Anti–Assignment Acts, and be bound by a contractor's assignment, even without strict compliance with the financing institution exception. *See e.g., Tuftco Corporation v. United States*, 222 Ct.Cl. 277, 614 F.2d 740 (1980). In *Tuftco*, the Court of Claims held that in limited circumstances the government can waive the notice provisions and recognize an assignment even when the contractor does

not comply with those provisions. While it declined to define exactly when the government waives notice, the court developed a totality of the circumstances test based on three factors: the government's knowledge of, assent to, and actions in accordance with the assignment. 222 Ct.Cl. at 287, 614 F.2d at 746. UCD argues that in this case, as in *Tuftco*, the government waived compliance with the notice provisions.

Plaintiff argues that the government was aware of the assignment between Scott and UCD, in spite of the absence of a written notice of assignment, because of a meeting between representatives of UCD and the government. Plaintiff asserts that in February 1985, Kenneth Moore, the manager of UCD, and Larry Scott of Scott & Sons, went to Camp Pendleton and had a conversation with a woman who said she was in charge of processing the accounts and invoices on the Scott contract. This unnamed woman purportedly gave Scott and UCD instructions as to what they needed to do "to ensure that UCD would receive payment." Moore in his affidavit said that they also had a similar meeting with someone at El Toro. He admits that he was not certain with whom he met or whether he met with people in the contracting office or the disbursing office. Plaintiff argues that these meetings should constitute knowledge on the part of the government so as to satisfy the first of the three *Tuftco* factors.

Next, plaintiff argues that the government should have been aware of the assignment because it sent payments to UCD's address, rather than directly to Scott. However, the factoring arrangement between Scott and UCD was a "nonnotification arrangement." That is, at all times during the contract, Scott's invoices were prepared on Scott & Sons letterhead, and all payments under the contract between Scott and the USMC were made payable to the order of Scott & Sons. Prior to the assignment, payments were mailed to the address on Scott's letterhead:

Scott & Sons Moving & Storage Co.
2458 S. Santa Fe Ave.
Vista, CA 92084

After the purported assignment, the invoices were mailed to the address stamped thereon:

PLEASE REMIT TO

Scott & Sons Moving & Storage, Inc.
1946 Myrtle Ave.
P.O. Box 1640
Monrovia, CA 91016–5640

This change of address notification gave no indication whatsoever that the contract with Scott had been assigned to UCD. In *Uniroyal* the Court of Claims refused to find an assignment, where the government was not furnished with a copy of the assignment instrument, even though the purported assignee told the contracting officer both orally and in writing to change both the address *and the name* of the remittee on the subject contract. 197 Ct.Cl. at 261–62, 454 F.2d at 1396. In the present case, the plaintiff's case is even weaker than that of the unsuccessful plaintiff in *Uniroyal*, because the government never received notice that the name of the remittee had changed. In fact, rather than alerting the government to the assignment, the nonnotification arrangement between Scott and UCD rendered the assignment invisible to the defendant.

*American Financial Associates* further illustrates the limits of the *Tuftco* "knowledge" factor. In that case, the Claims Court found no waiver of the notice provisions even when the plaintiff mailed a timely Notice of Assignment to the attention of the contracting officer, but not to the disbursing officer. Although the contracting officer had actual, written, and timely notice of the assignment, the court held that there had been insufficient compliance with the Act. Further, the contracting officer's knowledge could not be properly imputed to the disbursing officer so as to constitute a waiver of the Act's notice provisions. *American Financial Associates*, 5 Cl.Ct. at 767–69.

Neither *Tuftco* nor *American Financial Associates* indicates that a waiver will be found on mere constructive knowledge. In fact, these cases illustrate that even actual knowledge of an attempted assignment will

not always suffice to create a waiver. In the present case, the meetings between plaintiff and unnamed persons at Camp Pendleton and El Toro do not meet the threshold level of knowledge required by those cases. Finally, UCD's contention that the change of address constituted constructive knowledge of the assignment is unfounded, because there is no evidence to suggest that the government knew that the new address was UCD's and not Scott's.

Plaintiff argues that the fact that the government sent checks payable to Scott to UCD's address constitutes action in accordance with the assignment, thus satisfying the third *Tuftco* factor. As discussed above, the government had no way of knowing that it was sending checks to UCD's address. In fact, all of the government's actions were consistent with its belief that the contract had not been assigned. All checks were made payable to Scott; all correspondence and invoices sent to the government appeared on Scott letterhead; and all payments were mailed to an address naming Scott as the addressee. Further, the contracting officer, upon receipt of the February 6, 1987 "notice of assignment," returned it with a letter indicating that the contracts had been terminated and thus could not be assigned. These actions refute plaintiff's argument that the government acted in accordance with the assignment.

■ Neither was the second *Tuftco* factor—assent to the assignment—satisfied in this case. It seems clear that, regardless of the purported meetings at Camp Pendleton and El Toro, plaintiff did not seek assent by a *responsible* official such as the contracting officer or the disbursing officer until after Scott's contract had been terminated. No assent was ever given by these responsible officials.

### D. *Violation of Federal Labor Laws*

■ The SCA and the CWHSSA provide that a government agency may withhold funds from a contractor when the Department of Labor believes that the contractor has violated the Acts. 41 U.S.C. § 352(a), 40 U.S.C. § 328(b)(2). When funds otherwise payable to a government contractor are withheld pursuant to a suspected violation of federal labor laws, the contractor has no property rights in those funds. *Amoco Oil Co. v. Southeastern Mail Transport et al.*, 628 F.Supp. 37, 38 (M.D. Fla.1985). In a similar case concerning a contractor's violation of the Davis–Bacon Act, the Claims Court held that because the assignor had not fulfilled its contractual obligations (including full payment of its employees), it was not entitled to payment under the contract. Because the assignor was not entitled to payment, the assignee was not so entitled. *Unity Bank & Trust Co. v. United States*, 5 Cl.Ct. 380, 384 (1984), *aff'd*, 756 F.2d 870 (Fed.Cir.1985).

■ Therefore, even if Scott had properly complied with the notice provisions of the Anti–Assignment Acts, or if the government had waived compliance with those provisions, UCD could still recover nothing. An assignee acquires no greater rights than its assignor. *Produce Factors Corp. v. United States*, 199 Ct.Cl. 572, 582, 467 F.2d 1343, 1349 (1972); *Hardin County Savings Bank v. United States*, 106 Ct.Cl. 577, 599, 65 F.Supp. 1017, 1022 (1946). Because Scott had no rights to the withheld funds, UCD could not acquire, by way of an assignment, any rights to those funds.

### E. *Prior Security Interest and Equitable Lien Theories*

■ Plaintiff argues that it had priority over the withheld funds under either a security interest theory or an equitable lien theory. Plaintiff cites *Citicorp Industrial Credit, Inc. v. Brock*, 483 U.S. 27, 107 S.Ct. 2694, 97 L.Ed.2d 23 (1987), in which the United States Supreme Court rejected the secured creditor's argument that its ability to cure the contractor's wage and hours violation by paying the underpaid employees' wages gave the employees a "lien" superior to that of the secured creditor. *Id.* at 38–39, 107 S.Ct. at 2701–02. Plaintiff argues that the Court thus granted the creditor priority over the underpaid employees. However, the plaintiff misreads the holding in *Citicorp.* The Court in that

case upheld application of the Fair Labor Standards Act, but did not grant priority to *either* the employees *or* the secured creditor. Rather, the Court held that the rights *as between the assignor and the assignee* were unaffected by the application of the statute. *Id.* at 38, 107 S.Ct. at 2701.

In any event, any priority achieved under lien theory, either equitable or by obtaining a security interest, attaches only to payments *owing* to the debtor. As discussed above, Scott had no rights to the contract funds withheld pursuant to the SCA and the CWHSSA. Those funds were not owed to Scott, so UCD could not have acquired any rights, regardless of its priority, to the withheld funds. Secured creditors take their security interest subject to the laws of the land. *Id.* at 39, 107 S.Ct. at 2702. Where the government properly withholds payments because of the assignor's labor law violations, those funds are not owed to the assignor, so no security interest can attach to them.

### F. *Quantum Meruit*

■ Plaintiff argues that it is entitled to payments on a theory of quantum meruit. The doctrine of quantum meruit applies to avoid unjust enrichment when an express contract between parties is found to be void. In this case, there was never any contract between the plaintiff and the defendant, and there has never been any assertion that the contract between Scott and the USMC was void. The theory of quantum meruit is thus inapplicable to this case.

### G. *Other Recovery*

This court makes no ruling regarding the plaintiff's rights as assignee as against Scott, its assignor, except that they are unaffected by this ruling.

### CONCLUSION

■ Summary judgment is appropriate where no genuine issues of material fact are in question, and the moving party is entitled to judgment as a matter of law. RUSCC 56. Where both parties move for summary judgment, each party's motion must be considered on its own merits.

*Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987). Mere denials or conclusory statements are insufficient to create a genuine issue of material fact. *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 835–836 (Fed.Cir.1984). Thus, the vague and unsupported allegations that Moore and Scott "met with some people" at Camp Pendleton and El Toro or that telephone conversations were had with "someone" in the accounting offices are insufficient to create a material issue as to whether the government was aware of the assignment. The plaintiff has failed to meet its burden of showing that its assignment was effective against the government or that it is entitled to recover from the government the funds withheld from Scott pursuant to the SCA and CWHSSA.

For the reasons stated above, the defendant's motion for summary judgment is granted, and the plaintiff's motion is denied. Accordingly, the Clerk will dismiss the complaint. Each party will bear its own costs.