Robert CURTIS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 03–1247 C.

United States Court of Federal Claims.

Dec. 9, 2004.

Robert Curtis, Portland, OR, pro se.

Elizabeth Thomas, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Robert E. Kirschman, Jr., Assistant Director, Civil Division, U.S. Department of Justice, Washington, DC, for defendant.

*OPINION AND ORDER*

HEWITT, Judge.

The court has before it the parties' briefing for a determination under Rule 17 of the Rules of the Court of Federal Claims (RCFC) of the identity of the real party in interest in this case. Plaintiff's Reply to [Court Order] (Pl.'s Reply); Defendant's Response to Plaintiff's Reply to Court Order (Def.'s Resp.). Rule 17(a) requires that "[e]very action ... be prosecuted in the name of the real party in interest." Ascertaining the proper party in interest is a threshold issue that must be resolved before reaching the merits of a claim. *Page v. United States*, 49 Fed.Cl. 521, 522 & n. 1 (2001). Courts must apply state law to determine the proper party in interest. *See* RCFC 17(b) ("The capacity of an individual ... to sue or be sued shall be determined by the law of the individual's domicile.... [or in the case of a corporation,] by the law under which it was organized.").

In this case, plaintiff filed a complaint pro se alleging "wrongful default" and "wrongful harassment" involving contracts between an Oregon corporation and the Bureau of Land Management (BLM). *See* Complaint (Compl.) at 2 (unnumbered page).[1] If the corporate contractor is the real party in interest, it must be represented by an attorney in this court. *See* RCFC 83.1(c)(8) ("A corporation may only be represented by counsel."); *Talasila, Inc. v. United States*, 240 F.3d 1064, 1066 (Fed.Cir.2001) (stating that a corporation "must be represented by counsel in order to pursue its claim against the United States in the Court of Federal Claims"). If Mr. Curtis, in his individual capacity, is the real party in interest, he may appear without an attorney in this case. *See* RCFC 83.1(c)(8) ("An individual may represent oneself ... as a party before the court.").

For the following reasons, the court determines that the dissolved corporation is the real party in interest and that Mr. Curtis retains a shareholder derivative claim from the corporate dissolution. A shareholder derivative claim is viewed under Rule 83.1 as a

---

1. The court makes no finding as to whether these claims are meritorious.

corporate claim. Accordingly, whether this case is brought by Mr. Curtis or the corporation, Rules 17(a) and 83.1(c)(8) require that a corporation be represented by counsel, and Mr. Curtis may not proceed individually without counsel.

### I. Background [2]

In response to plaintiff's pro se complaint, defendant asserted in a motion to dismiss that the corporate contractor "appears to be the real party in interest, and . . . [as] a corporation [is] required to be represented by an attorney, . . . pursuant to RCFC 83.1(c)(8)." Defendant's Motion to Dismiss at 1; *see also* RCFC 83.1(c)(8) ("A corporation may only be represented by counsel."). The court ordered plaintiff to obtain legal representation and, after his failure to do so, dismissed the complaint without prejudice. Order of May 21, 2004 at 2.

Some two months later, plaintiff filed a Motion to Reopen the case, alleging that the insolvent corporation had transferred its assets to plaintiff in his individual capacity. Plaintiff's Motion to Reopen at 2; *Curtis v. United States*, 61 Fed.Cl. 511, 514 (2004) ("Plaintiff's argument that [the corporation] is insolvent and its assets have been transferred to Mr. Curtis is an argument newly presented to the court."). Furthermore, the court noted the possibility of a factual mistake in its May 21, 2004 determination of the corporate status of the contractor-in particular, its prior determination that "Oregon public records indicate that [it] was involuntarily dissolved . . . before [the contractor] and the BLM entered into any of the contracts upon which the complaint is based and before this action was filed." *Curtis*, 61 Fed.Cl. at 514–15 (internal citation omitted). On August 6, 2004, the court ordered that the judgment entered on May 21, 2004 be vacated. *Id.* at 516. The court ordered plaintiff to document the contractor's corporate status during the time at issue in the complaint to allow the court to reconsider its prior determination of the real party in interest. *Id.* In its order vacating judgment, the court ordered plaintiff to provide:

(1) official documentation, including, without limitation, records of the Oregon Secretary of State, of [the corporate contractor's] corporate status between approximately August 1998 and August 2000, when [the corporate contractor] entered into the contracts that form the basis of the complaint, and (2) official documentation of [the corporate contractor's] insolvency and of the transfer of assets to Mr. Curtis as an individual, together with briefing explaining the impact of the foregoing for a determination under Rule 17 of the identity of the real party in interest in this case.

*Id.*

Pursuant to that order, plaintiff submitted documentation that indicated the registration by plaintiff of two separate Oregon corporations with nearly identical names, one established in 1995, Pl.'s Reply at 10 (unnumbered page), and the second established in 1998, *id.* at 8 (unnumbered page). "Curtis Ltd." (Old Curtis) was established in February of 1995 and dissolved in April of 1996, before the BLM contracts at issue were entered into. *See Curtis*, 61 Fed.Cl. at 514; *see also* Pl.'s Reply at 10 (unnumbered page) (state records listing the filing of "Curtis Ltd." on February 8, 1995 and its "involuntary dissolution" on April 5, 1996). Two years later, Mr. Curtis registered a new corporate name, "Curtis, Ltd." (New Curtis), which name was the same as the name of the 1995 corporation except for the addition of a comma between "Curtis" and "Ltd." *See* Pl.'s Reply at 1, ¶ 1 ("On May 12, 1998 Curtis[,] Ltd. [w]as re[sic]-registered with the Oregon Corporate Division."); *id.* at 8 (unnumbered page) (state records listing the "start date" for "Curtis, Ltd." as May 12, 1998 under the history of the corporate name). New Curtis was in active corporate status until July of 2001, when it was administratively dissolved. *See id.* at 3, ¶ 7; *id.* at 9 (unnumbered page) (state records showing administrative dissolution on July 13, 2001).

Plaintiff's documentation effectively undercuts the basis on which the court vacated its prior judgment. *See* 61 Fed.Cl. at 514 (noting that Oregon public records indicated the

---

**2.** For additional procedural history, see *Curtis v.*      *United States,* 61 Fed.Cl. 511, 511–12 (2004).

dissolution of Old Curtis in April 1996, "before [plaintiff's corporation] and the BLM entered into any of the contracts upon which the complaint is based"). New Curtis, however, existed in 1998–2000, when the contracts at issue in this case were entered into. *Cf. Curtis,* 61 Fed.Cl. at 515.[3]

Further to the court's order vacating judgment, *see id.* at 516, plaintiff documented a corporate transfer of assets from New Curtis to Mr. Curtis individually in the form of a letter dated July 4, 2004 and notarized on August 19, 2004, assigning "all pas[t], present [a]nd future assets of [New Curtis] [t]o ... Robert Curtis, individual." Pl.'s Reply at 7 (unnumbered page).[4] Plaintiff also argues that the transfer of corporate assets began "immediately" after the September 2000 "[w]rongful default" he alleges against the BLM, when "Robert Curtis ... began to liquidate all assets of [New Curtis] ... so Robert Curtis could survive." Pl.'s Reply at 1–2, ¶¶ 3–5. As evidence of corporate insolvency, plaintiff asserted that "[t]he [New Curtis] Checking account and Visa Account have been closed for two years due to being over drawn" and that "Robert Curtis, an individual[,] is now [h]omeless. The money for postage to mail this letter was money for dinner." *Id.* at 5, ¶¶ 19–20; *see also id.* at 5 (claiming that plaintiff's van was repossessed and his bank accounts closed).

## II. Discussion

Plaintiff makes several legal and equitable arguments to support his claim that he is the real party in interest under Rule 17 and should be allowed to proceed pro se. None of these arguments can prevail in this case. Plaintiff contends that Oregon law prohibits an administratively dissolved corporation from conducting business but does not termi-

nate the authority of the registered agent of such a corporation. *Id.* at 3, ¶ 7. This point is not relevant to the determination of this case because the authority of the agent is not at issue.

Plaintiff also points out that Oregon law does not limit corporate survival after dissolution to a term of years, as did the state law at issue in *Talasila. See id.; Talasila,* 240 F.3d at 1066 (citing Tex. Bus. Corp. Act. Ann. art. 7.12(A) (West 2000)). This distinction is not pertinent either, because the length of corporate survival is not disputed.

Plaintiff also argues that "[s]ince [he is] a sole proprietor[,] [n]o [o]ne will protest the assignment [of corporate assets to an individual] and [n]o one will be harmed, and only Robert Curtis will benefit or not. Equitable ownership at all times remain[ed] with the same individual." *Id.* at 2, ¶ 5. This equitable argument is unavailing because the purposes of the Assignment of Claims Act, 31 U.S.C. § 3727 (2000) (Anti–Assignment Act or Act), do not include the protection of Mr. Curtis's interests in the manner suggested.

Defendant cites Oregon law for the proposition that corporate dissolution neither effects a transfer of corporate assets nor " '[p]revent[s] commencement of a proceeding by or against the corporation in its corporate name.' " Def.'s Resp. at 3 (quoting Or.Rev.Stat. § 60.637[(2)](e) (2003)). Defendant maintains that the "[s]tatutory ability to file suit regardless of whether it was dissolved" requires the corporation to pursue its own claims. *Id.* (citing *Sealacota Trust v. Harrison,* No. CV–96–704–ST, 1998 WL 1145266, at *2 (D.Or.1998)) (stating that under Oregon's corporate law, "the fact that a business entity was dissolved in 1997 does not affect its ability to prosecute this lawsuit which it filed prior to that date").[5] Further-

---

3. Both plaintiff and defendant often refer to New Curtis as "Curtis Ltd." (without the comma). Of course this is incorrect and could in other circumstances be a matter of consequence. But here, plaintiff does not argue that he intended that the dissolved Old Curtis act as contractor in the disputed contracts. The assumption of plaintiff's filings with the court is that New Curtis entered into the contracts with BLM and, accordingly, that the contracts at issue are contracts of New Curtis.

4. This is the same letter that plaintiff submitted on August 6, 2004 in his Motion to Reopen. Pl.'s Mot. to Reopen at 3 (unnumbered page); *see also* August 6, 2004 Order (directing the Clerk of the Court to file plaintiff's Motion to Reopen and the accompanying letter).

5. In *Sealacota Trust,* defendants sought summary judgment on the ground that the corporate plaintiff was not the real party in interest "because it was not in existence ... at the time the alleged acts [forming the basis of the complaint] oc-

more, defendant argues that any transfer of corporate assets from New Curtis to Mr. Curtis as an individual is invalid under the Anti–Assignment Act, which prohibits assignment of claims against the government. *Id.* at 4 (citing *United Cal. Discount Corp. v. United States,* 19 Cl.Ct. 504, 507 (1990)). Well-established exceptions to the Act for assignments by operation of law-e.g., mergers, consolidations, or reorganizations-are inapplicable to Mr. Curtis, defendant argues, because "Oregon law expressly provides that dissolution of a corporation does not effect a transfer of title to corporate assets." *Id.* at 6 (citing Or.Rev.Stat. § 60.637[(2)](a) and *Page,* 49 Fed.Cl. at 530).

Defendant also argues that New Curtis's July 4, 2004 transfer of assets to Mr. Curtis does not come under any of the exceptions to the Act because it appears merely to be " 'used to circumvent the rule' that a corporation that possesses power to sue and be sued must litigate its own claims." Def.'s Resp. at 4 (quoting *Finast Metal Prods., Inc. v. United States,* 12 Cl.Ct. 759, 762 (1987)). Defendant argues that Mr. Curtis may not pursue his claims as a "successor-in-interest to the corporate assets" absent a valid assignment, because to do so would be a derivative action, and derivative suits brought by former shareholders on behalf of a corporation require legal representation, just as any corporate claim does. *Id.* at 7 (citing *Page,* 49 Fed.Cl. at 528–29).

The court agrees with defendant that Oregon law does not support plaintiff's contentions. *See* Part II.A *infra* (discussing relevant Oregon corporate law). Neither does the Anti–Assignment Act permit New Curtis to make the purported July 4, 2004 transfer of its claims to plaintiff, *see* Part II.B *infra;* nor may plaintiff pursue his claims on his own behalf, as defendant argues, because they are derivative in nature, *see* Parts II.C & II.D *infra.*

curred [and] was formed after this lawsuit was filed." 1998 WL 1145266, at *2. The court examined Oregon public records and determined that the corporation existed prior to the authorization and commencement of the lawsuit and was therefore able to "continue [the] lawsuit

**A. Corporate Dissolution and Transfer of Assets under Oregon Law**

■ Oregon law provides that:

[a] corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under [the statute defining wind up activities], and notify claimants under [statutes providing for disposition of known and unknown claims against dissolved corporations].

Or.Rev.Stat. § 60.651(3). The registered agent of a dissolved corporation retains its authority. § 60.637(2)(g); § 60.651(4). Whether an Oregon corporation is voluntarily or administratively dissolved, its legal existence is limited to the winding up of business, including collecting assets, disposing of or distributing remaining property, discharging liabilities, or "[d]oing every other act necessary to wind up and liquidate its business and affairs." § 60.637(1). Corporate dissolution does not "[t]ransfer title to the corporation's property; [p]revent transfer of its shares or securities[;] . . . [p]revent commencement of a proceeding by or against the corporation[; or] . . . [a]bate or suspend a proceeding pending by or against the corporation." § 60.637(2).

Oregon corporate law sets no time limit on the wind up period of a dissolved corporation and anticipates that the process may extend indefinitely. *See* § 60.641(2) (allowing a dissolved corporation to notify known claimants against it "*at any time* after [the dissolution's] effective date" and to set a deadline for receiving claims "*[no] fewer than 120 days*" after the date of such notice) (emphasis added); § 60.644(3) (requiring inchoate claims against a dissolved corporation to be brought within five years after published notice of the dissolution). *City of Klamath Falls v. Bell,* 7 Or.App. 330, 490 P.2d 515 (1971), discusses Oregon's provisions for corporate wind up in equitable terms, finding the law to be

despite its dissolution." *Id.* Because the facts before it evidenced the plaintiff's corporate existence during the time at issue, the court found the corporation to be the real party in interest. *Id.* at *3.

"in effect a statutory expansion of the equitable doctrine that upon dissolution of a corporation its property, notwithstanding the technical rules of the early common law, does not escheat to the sovereign or revert to the original grantor, and will be administered ... for the purpose of winding up the corporate affairs and distributing the assets to those equitably entitled to them."

*Bell*, 490 P.2d at 520 (quoting *Addy & Errett v. Short*, 89 A.2d 136, 139 (Del.1952) (alteration in original)).[6] Oregon's Court of Appeals therefore held that the two sole shareholders of a "lawfully dissolved" corporation "were statutorily entitled to and did receive all of the remaining assets of the corporation," which included a possibility of reverter of a property interest granted to the city by the corporation before its dissolution. *Id.* In this case, the wind up period extended over forty years from the time of corporate dissolution to the time of reverter, when the court held that the property interest passed to the heirs and assigns of the sole shareholders. *Id.* at 521.

Oregon law appears to put no restrictions on a dissolved corporation's discretion to transfer or distribute assets in the winding up of its business and affairs. For example, *High v. Davis*, 283 Or. 315, 584 P.2d 725 (1978), also commenting on the statutory predecessor of Oregon's current dissolution statute, *see supra* n. 6, held that an involuntarily dissolved corporation validly conveyed an equitable interest more than one year after its dissolution. *High*, 584 P.2d at 729 ("Thus, [under the statutory wind up period the corporation] was able to convey its ... interest even after its dissolution."); *see also* Or.Rev. Stat. § 60.674 (providing, as a last resort, that "[a]ssets of a dissolved corporation [to] be distributed to a creditor, claimant or shareholder of the corporation who cannot be found shall be reduced to cash and, within one year after the final distribution in such liquidation or winding up is payable, deposited with the Department of State Lands").

Under applicable Oregon law, New Curtis's corporate existence continues indefinitely after administrative dissolution for the sole purpose of winding up its business. *See* Or.Rev.Stat. § 60.651(3). Upon dissolution, title to corporate property did not pass by operation of law to Mr. Curtis as sole shareholder, as plaintiff argues, Pl.'s Reply at 1–2, ¶¶ 3–5. *See* § 60.637(2)(a) ("Dissolution of a corporation does not ... [t]ransfer title to the corporation's property."). However, the subsequent transfer of corporate assets to Mr. Curtis in his individual capacity, as documented by the July 4, 2004 letter, *supra* n. 4 and accompanying text, appears to have been valid pursuant to Oregon law. *Cf. High*, 584 P.2d at 729 (finding a valid conveyance of a corporate interest more than one year after the corporation was involuntarily dissolved); *Bell*, 490 P.2d at 521 (holding that a corporate property interest passed to heirs and assigns of the sole shareholders more than forty years after the corporation's voluntary dissolution). In transferring corporate assets to himself, Mr. Curtis was arguably winding up and liquidating his business pursuant to section 60.637(1) of the Oregon Revised Statutes, which defines "winding up" as disposing of or distributing remaining assets, or "[d]oing every other act necessary to wind up and liquidate [a corporation's] business and affairs." Or.Rev.Stat. § 60.637(1)(e).

Presuming a valid transfer of assets (including New Curtis's contract claims against the BLM) under state law, Mr. Curtis might qualify for a substitution under Rule 25(c) as the successor-in-interest to the dissolved corporation's asserted claims. *See* RCFC 25(c) (providing that, "[i]n case of any transfer of interest," the court may "upon motion direct[ ] the person to whom the interest is transferred to be substituted in the action"). An instructive example of such a substitution appears in *National Australia Bank v. United States*, 54 Fed.Cl. 238 (2002), which allowed a bank to substitute its parent corporation under Rule 25(c) as plaintiff in a contract claim against the government. However, New Curtis's transfer of assets to Mr. Curtis does not qualify for a Rule 25 substitution as successor-in-interest because the transfer is invalid as to the United States, as defendant argues, under the Anti–Assignment Act. Def.'s Resp. at 4.

---

6. *Bell* discusses Or.Rev.Stat. § 57.630, the predecessor statute to Or.Rev.Stat. § 60.637.

## B. The Assignment of Claims Act

The Assignment of Claims Act governs the assignment of claims against the United States. 31 U.S.C. § 3727(a)(1). The Act provides in pertinent part that "a transfer or assignment of any part of a claim against the United States . . . may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." 31 U.S.C. § 3727(a)-(b); *see also Page,* 49 Fed.Cl. at 530 (declining to recognize an alleged assignment because "[t]he alleged claim ha[d] neither been allowed nor decided, and no warrant for payment ha[d] issued as required by the Act"). The basic objectives of the Act are:

> [F]irst to prevent persons of influence from buying up claims which might then be improperly urged upon Government officials; second, to prevent possible multiple payment of claims and avoid the necessity of the investigation of alleged assignments by permitting the Government to deal only with the original claimant; and third, to preserve for the Government defenses and counterclaims which might not be available against an assignee.

*Kingsbury v. United States,* 215 Ct.Cl. 136, 563 F.2d 1019, 1024 (1977) (citing *United States v. Shannon,* 342 U.S. 288, 291–92, 72 S.Ct. 281, 96 L.Ed. 321 (1952) and *United States v. Aetna Surety Co.,* 338 U.S. 366, 373, 70 S.Ct. 207, 94 L.Ed. 171 (1949)).

Judicial interpretations of the Act have allowed exceptions for certain assignments, including those occurring by operation of law. *See Standard Mfg. Co. v. United States,* 42 Fed.Cl. 748, 779 (1999). For example, *National Australia Bank* held that a parent corporation retained the claims of its wholly-owned subsidiaries after the subsidiaries were sold, a circumstance "analogous to those in which a claim is transferred to a different corporation by virtue of a merger or sale, an event [by operation of law] which does not trigger the Anti–Assignment Act." 54 Fed.Cl. at 239. "[T]he Anti–Assignment Act should not be mechanically applied," the court stated, in cases where the main purposes of the Act are not implicated. *Id.* at 240 (citing *Shannon,* 342 U.S. at 291–292, 72 S.Ct. 281). The court reasoned that the successor-in-interest parent company "could have attempted to collapse the corporate structures [of the subsidiaries] into its own" but that the choice not to do so, and merely to retain the claims, did not "offend[ ]" the Act. *Id.* at 239–40. In *Stearns Company v. United States,* this court also recognized a "reorganization in business structure" exception to the Act for a corporate plaintiff reorganizing as a partnership in a different state. 34 Fed.Cl. 264, 270–71 (1995) (noting that "equitable ownership of the . . . claim at all times remained in the same individuals in the same proportion"); *cf.* Pl.'s Reply at 2, ¶ 5 ("Equitable ownership at all times remain[ed] with the same individual."); *see also Stearns,* 34 Fed.Cl. at 271 (allowing transfer of the corporation's claim against the government by operation of law partly because "no evidence exist[ed] that [the corporation] reorganized just to transfer this claim")

State corporate law defining dissolution and wind up necessarily determines the application of the exception to the Act for transfers by operation of law. For example, *Page* found that dissolution under state law did not effect a transfer of corporate assets invoking an exception to the Anti–Assignment Act. *See* 49 Fed.Cl. at 526. Applying Illinois corporate law, *Page* found that a takings claim against the government asserted by pro se plaintiffs prior to dissolution of their corporation passed by operation of law to shareholders and became derivative in nature. *Id.* at 528. Plaintiffs were barred from proceeding pro se because derivative claims also require representation by an attorney, *id.* at 528–29, and plaintiffs did not provide evidence of a valid assignment of claims, *id.* at 531. Dissolution did not produce a "reorganization of business structure" or effect "a reorganization by operation of [applicable state] law" [7] that fit within one of the " 'judicially-made exceptions' " to the Anti–Assignment Act. *Id.* at 530–31 (quoting *Standard Mfg. Co.,* 42 Fed.Cl. at 779). In *Byers v. United States,* No. 99–791 C, 2000 U.S. Claims LEXIS 266 (Fed.Cl. May 19,

---

**7.** Under Illinois law, "dissolution of a corporation does not effect a transfer of title to corporate assets." *Page,* 49 Fed.Cl. at 530–31 (citing 805 Ill. Comp. Stat. 5/12.30(c)(1)).

2000), the court reaches a similar conclusion. Mr. Byers brought suit "in his own name to recover damages for himself that [were] owed to ... his former ... corporation." *Byers*, 2000 U.S. Claims LEXIS 266, at *11. Applicable state law expressly did not transfer title of corporate assets upon dissolution. *See id.* at *10 (citing Ariz.Rev.Stat. § 10–1405 (West 2000)). Accordingly, plaintiff was denied pro se representation as sole shareholder because his suit was derivative in nature, and the "action belong[ed] to the corporation." *Id.* at *11.

C. Shareholder Derivative Claims under Oregon Law

■■ Oregon state courts distinguish between direct shareholder claims and shareholder derivative claims on the basis of standing. *Loewen v. Galligan*, 130 Or.App. 222, 882 P.2d 104 (1994), defines direct shareholder claims as those arising out of "special injury" to the individual:

> If ... a shareholder has a "special" injury, then the shareholder has standing to assert a direct claim. A special injury is established where there is a wrong suffered by the shareholder not suffered by all shareholders generally or where the wrong involves a contractual right of the shareholders, such as the right to vote.... [M]inority shareholders in a *closely held* corporation [can] bring a direct action when they ... allege[ ] that the actions taken by the majority shareholders ... breached fiduciary duties to the minority shareholders.

*Id.* at 111. In *Noakes v. Schoenborn*, 116 Or.App. 464, 841 P.2d 682 (1992), the court defines derivative claims as those arising from a "wrongful act that diminishes the value of stock and thereby injures shareholders only indirectly, by reason of the prior injury [diminishing stock value] to the corporation" and observes the long-standing and "general rule ... that such claims must be brought in the name of the corporation." *Id.* at 686 (citing *Weiss v. Northwest Acceptance Corp.*, 274 Or. 343, 546 P.2d 1065 (1976), and

*Smith v. Bramwell*, 146 Or. 611, 31 P.2d 647 (1934)).

The Ninth Circuit also frames the test for a direct shareholder claim as one of standing: [8] courts must consider "whether the person who brings the suit is a person harmed by the alleged wrong." *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 841 n. 1 (9th Cir.1976). *Von Brimer* also articulates the "settled principle" that mere "economic injury to a shareholder cannot support a personal cause of action." *Id.* at 846 (acknowledging an exception to this principle "when the injury is to the plaintiff individually, as where the action is based on a contract to which [plaintiff] is a party, or on a right belonging severally to [plaintiff], or on a fraud affecting [plaintiff] directly" (internal quotation marks omitted)). The court in *Johnson v. Con–Vey/Keystone, Inc.* applied *Von Brimer* to dismiss individual shareholder plaintiffs for lack of standing. 814 F.Supp. 931, 934–35 (D.Or.1993). Shareholder plaintiffs in *Johnson* brought suit individually on behalf of their dissolved Oregon corporations; the court retained the corporations as plaintiffs but dismissed the individuals because "[t]he law is clear that a shareholder does not have standing to seek compensation for an injury to a corporation." *Id.* at 934.

Plaintiff argues that "[New Curtis] ceased to exist the moment [of] the [BLM's] [w]rongful [d]efault" because the default caused the corporation insurmountable financial difficulties. *See* Pl.'s Reply at 5; *see also id.* at 2–3, ¶¶ 4–9 ("[T]he BLM withheld all funds that were due [New Curtis] from a due [p]rogress [p]ayment," which led plaintiff eventually to demand of the contracting officer, "Where is my money-[y]our time is up."). Because Mr. Curtis alleges no "special injury" to himself beyond economic destruction of his closely held corporation, his claim is derivative and "must be brought in the name of the corporation." *Noakes*, 841 P.2d at 686; *see also* Def.'s Resp. at 7.

D. Requirement that Corporations Be Represented by Counsel

Rule 83.1 states that "[a] corporation may only be represented by counsel" in the Court

---

**8.** " 'Standing' in its strict sense is 'a complicated specialty of federal jurisdiction.' " *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 841 n. 1 (9th Cir.1976) (citing *United States ex. rel. Chapman v. Fed. Power Comm'n*, 345 U.S. 153, 73 S.Ct. 609, 97 L.Ed. 918 (1953)).

of Federal Claims. RCFC 83.1(c)(8). The Federal Circuit in *Talasila* found this rule to be "clear and unqualified, and [its] plain language ... does not contemplate exceptions."[9] 240 F.3d at 1067. *Talasila* held that a sole successor-in-interest of a dissolved corporation could not appear pro se under Texas corporate law, which "requires that the present action, which relates to the rights of the corporation and which was brought prior to the corporation's dissolution, be maintained by the corporation, ... not by [the individual plaintiff]." *Id.* at 1066–67.

Even individual shareholders inheriting corporate claims by operation of law are not recognized in all circumstances-particularly not those in which parties appear to be attempting to circumvent court rules. "A subsequent transfer of interests to an individual cannot be used to circumvent the rule" requiring corporations to be represented by counsel. *Finast,* 12 Cl.Ct. at 762 (citing *Palazzo v. Gulf Oil Corp.,* 764 F.2d 1381, 1385–86 (11th Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 799, 88 L.Ed.2d 775 (1986), and *Jones v. Niagara Frontier Transp. Auth.,* 722 F.2d 20, 23 (2d Cir.1983)). In *Finast,* this court refused to allow a pro se plaintiff to pursue a claim on behalf of her dissolved corporation-even though the claim had devolved to her by operation of state law-because recognition of the transfer "would offend notions of fairness" by allowing the plaintiff "to escape the requirement ... that a corporation be represented by an attorney." *Id.* at 761.

### III. Conclusion

Here, plaintiff asserted his claims after the dissolution of New Curtis, *see* Pl.'s Reply at 9 (unnumbered page) (showing administrative dissolution on July 13, 2001); Compl. (date stamped May 13, 2003), but the claims are derivative because they allege harm to the corporation occurring before its administrative dissolution, *see Johnson,* 814 F.Supp. at 934 ("The law [of Oregon] is clear that a shareholder does not have standing to seek compensation for an injury to a corporation."). Plaintiff may not avoid application of the Anti–Assignment Act by arguing that corporate assets passed to him immediately upon dissolution by operation of law, *see* Pl.'s Reply at 1–2, ¶¶ 3–5, because Oregon law specifically states that dissolution does not effect a transfer of title to corporate property, *see* Or.Rev.Stat. § 60.637(2)(a).

The Anti–Assignment Act invalidates New Curtis's July 4, 2004 transfer of assets to Mr. Curtis as an individual to the extent the transfer covers "any claim against the United States." 31 U.S.C. § 3727(a)(1); *see* Part II.B *supra*. Plaintiff may not pursue the corporate claims on his own behalf because they are derivative in nature. *See* Part II.C *supra*. Furthermore, the transfer of assets plaintiff documents occurred after the commencement of this suit and appears to be intended to circumvent the rule requiring corporations to be represented by counsel. *See* Pl.'s Mot. to Reopen at 3 (unnumbered page) (assigning corporate assets to Mr. Curtis in a letter dated July 4, 2004, more than one year after plaintiff filed his complaint in this court); Pl.'s Reply at 7 (unnumbered page) (resubmitting the same letter after notarization on August 19, 2004); *see also* Pl.'s Mot. to Reopen at 2, ¶¶ 6–7 ("Robert Curtis is *now* legally Curtis[,] Ltd. [a]nd requires NO [a]ttorney for representation in a [c]ourt of [l]aw.") (emphasis added). Mr. Curtis, as the registered agent with authority to wind up the business and affairs of his corporation, may assert claims on behalf of New Curtis, *see* Part II.A *supra*, but he must do so through counsel pursuant to Rule 83.1(c)(8). See *Finast,* 12 Cl.Ct. at 762 ("The court is not free to waive this rule, even in cases of severe financial hardship.").

Rule 17 states that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by ... the real party in interest." RCFC 17(a). Accordingly, Mr.

---

**9.** The Federal Circuit declined to follow the reasoning of *U.S. Polycon Corp. v. United States,* 43 Fed.Cl. 11 (1999), which made an exception to the rule that corporations must be represented by counsel to allow a sole shareholder to appear pro se on behalf of his corporation. *See Talasila,* 240 F.3d at 1067.

Curtis is directed either to appear as a shareholder of Curtis, Ltd. by counsel or to substitute his dissolved corporation, Curtis, Ltd. (sometimes referred to in this opinion as "New Curtis"), as plaintiff, in either case on or before March 3, 2005, which the court finds to be an allowance of "a reasonable time" after this court's determination of the real party in interest. *See* RCFC 17(a). Either Mr. Curtis as a shareholder of Curtis, Ltd. or Curtis, Ltd. shall appear before the court represented by counsel who is a mem- ber of the bar of this court. If plaintiff fails timely to comply with the foregoing, the case will then be subject to dismissal.

IT IS SO ORDERED.